IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AARON CLARK,

      Plaintiff,

v.

LATOYA HUGHES, ANTHONY
WILLS, KEVIN REICHERT, JOHN DOE
#4, PHILIP K. ROYSTER, CURTIS
DALLAS, JOHN DOE #7, K.
WILLIAMSON, JOHN DOE #9, JOHN
DOE #10, JOHN DOE #11, JOHN DOE
#12, BIRKNER, JOHN DOE #14, JOHN
DOE #15, JOHN DOE #16, M.
ROHLFING, JOHN DOE #18,

      Defendants.

Case No. 25-cv-1944-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Aaron Clark, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Clark alleges that Defendants failed to protect him and subjected him to excessive force.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

1

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Clark alleges that Anthony Wills, Kevin Reichert, Latoya Hughes, John Doe #9 Protective Custody Committee Member, John Doe #10 Protective Custody Committee Member, John Doe #11 Internal Affairs Lieutenant, and John Doe #15 Warden of Programs failed to protect him by failing to comply with the rules after he reported a threat to his life (Doc. 1, p. 7).[1] On January 10, 2024, Clark asked to be removed from general housing because he no longer wanted to be part of a gang (*Id*.). He wanted out of his cellhouse, but he was denied placement in protective custody (*Id*.). Because he remained in general population, he feared for his safety and intentionally acted to obtain a disciplinary ticket on January 18, 2024, in order to be transferred to North 2 restrictive housing (*Id*.). Clark filed numerous grievances but never received a response (*Id*.).

Despite making the administration aware of the threat to his life, Clark was placed back into the East Cellhouse on January 28, 2024 (Doc. 1, p. 8). On February 27, 2024, he was stabbed over 20 times in the shower (*Id*.). Clark blames Wills, Reichert, Birkner, John Doe #11, and John Doe #15, alleging that the officials were deliberately indifferent to his safety needs (*Id*.).

---

[1] The John Doe defendants are identified on the docket as John Doe #'s 1-10. But in his Complaint, Clark has identified them by the number of the order of all defendants in his list of parties, starting with John Doe #4 (*See e.g.* Doc. 1, p. 2, Defendant #4: John Doe Chief of Operations). Because Clark has labeled the unknown defendants in a specific order, the Court directs the Clerk to CORRECT the docket to match the number and identity of each John Doe defendant as labeled by Clark.

After returning from the hospital for his injuries, Clark was placed in restrictive housing for investigation (Doc. 1, p. 8). He wrote two emergency grievances, but he never received a response or a grievance number (*Id*. at pp. 8, 11). His family called the prison asking for a transfer out of Menard (*Id*.). On March 28, 2024, Clark was placed back in the same cell house where he was stabbed (*Id*.). He blames Hughes, Wills, Reichert, John Doe #11, John Doe #12 Internal Affairs Lieutenant, Birkner, John Doe #14 Intelligence Officer, and John Doe #15 for his placement (*Id*.). On June 6, 2024, he was attacked while on the yard (*Id*.). During the assault, Clark fought his attacker. In response, John Doe #4 Chief of Operations, Philip Royster, Curtis Dallas, K. Williamson, Reichert, and John Doe #18 Shift Commander shot over 300 rounds of pepper balls (*Id*. at p. 9). The balls hit Clark in the face, head, and upper body leaving him with permanent circular marks on his body (*Id*.). The officers were also investigated for excessive force (*Id*.). Clark alleges that as veteran, trained employees, they should have known how to properly use the pepper ball launchers (*Id*.). But the officers continued to shoot Clark even after he stopped fighting (*Id*.).

Clark alleges that he tried to file a grievance about the incident but M. Rohlfing, Wills, Reichert, Royster, Dallas, and John Doe #'s 4, 15, 18, as well as John Doe #7 S.O.R.T. Supervisor and John Doe #16 Housing Unit Placement Officer acted in collusion to interfere with the grievance (Doc. 1, p. 9).

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

3

> **Count 1:** Eighth Amendment failure to protect claim against Wills, Reichert, Hughes, Birkner, and John Doe #'s 9, 10, 11, 12, 14, and 15 for denying Clark's request for protective custody and continuing to place Clark back into units where he faced a risk of assault.
>
> **Count 2:** Eighth Amendment excessive force claim against Royster, Dallas, Williamson, Reichert, and John Doe #'s 4 and 18 for their use of pepper balls on Clark on June 6, 2024.
>
> **Count 3:** Illinois state law claim for assault and battery against Royster, Dallas, Williamson, Reichert, and John Doe #'s 4 and 18 for their use of pepper balls on Clark on June 6, 2024.
>
> **Count 4:** First Amendment retaliation claim against Rohlfing, Wills, Reichert, Royster, Dallas, and John Doe #'s 4, 7, 15, 16, and 18 for interfering with Clark's grievances.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

**Count 1**

In order to state a failure to protect claim, a plaintiff must allege that "he was incarcerated under conditions posing a substantial risk of serious harm and…the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quotations omitted). A plaintiff must show that prison

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

officials were aware of a specific, impending, and substantial threat to their safety, often by showing "that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). The claim cannot be "predicated merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005).

Here, Clark fails to identify a specific threat to his safety. He merely alleges that he asked to be removed from his original cellhouse because he did not want "to be involve[d] in this gang life." But Clark fails to identify the gang, nor does he allege when he left the gang or who in the cellhouse posed a threat to him. Further, there are no allegations to suggest that each individual defendant had actual knowledge of these threats. Clark fails to allege that he spoke to any of the individual defendants or, if he did speak with them, when he communicated with each defendant and the information he provided them regarding the alleged threats he faced in the cellhouse. He merely alleges that "administration [was] aware of the threat to my life, and they fail[ed] to protect me from a known threat." (Doc. 1, p. 8). But his vague and conclusory statement that administration was aware of threats is not enough to state a claim against any individual defendant.

Clark does allege that he requested protective custody at one point and was denied, but he fails to allege how any of the identified defendants were involved in the protective custody process. He also alleges that the defendants placed him back in the same cellhouse after an assault but again fails to indicate how each defendant was involved in that placement. To be liable, each defendant must be personally involved in

the constitutional violation. *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under [Section] 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."); *Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009) ("[l]iability depends on each defendant's knowledge and actions"). Because Clark fails to indicate how each defendant was aware of specific threats to his safety and personally involved in his placement, Clark's claim in Count 1 is **DISMISSED without prejudice**.

**Counts 2 and 3**

Clark does, however, state a viable claim in Count 2 for excessive force. He alleges that each defendant shot pepper balls at him, even after he stopped fighting and was no longer a threat. His allegations suggest that the continued force was used "maliciously and sadistically" rather than in "a good-faith effort to maintain or restore discipline." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). The same allegations also adequately state an assault and battery claim under Illinois state law. *Shea v. Winnebago County Sheriff's Department*, No. 17-3078, 746 F. App'x 541, 548 (7th Cir. Aug. 16, 2018) (discussing assault and battery under Illinois law). Because the allegations derive from the same allegations as the federal claim, Count 3 shall also proceed against Royster, Dallas, Williamson, Reichert, and John Doe #'s 4 and 18.

The Court also **ADDS** Matthew Plummer, the current warden of Menard, to the case in his official capacity only to respond to discovery aimed at identifying the John Does. All other official capacity claims are **DISMISSED without prejudice**.

**Count 4**

To state a retaliation claim, a plaintiff must allege that he engaged in protected activity, "suffered a deprivation likely to deter such activity," and the "First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell,* 756 F.3d 983, 996 (7th Cir. 2014). "The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Clark merely states in conclusory fashion that the defendants colluded to interfere with the grievance process and ensured that his grievances failed to receive a reply. But he fails to allege that their actions were motivated by his grievances. Clark merely alleges that he failed to receive a response to some of his grievances. Further, he fails to adequately allege how each defendant was personally involved in handling Clark's grievances. Thus, Clark fails to state a retaliation claim.

## Disposition

For the reasons stated above, Counts 2 and 3 shall proceed against Royster, Dallas, Williamson, Reichert, and John Doe #'s 4 and 18. All other claims and defendants are **DISMISSED without prejudice**. Warden Matthew Plummer is **ADDED** to the case in his official capacity only to help identify the John Does.

The Clerk of Court shall prepare for Kevin Reichert, Philip K. Royster, Curtis Dallas, K. Williamson, and Matthew Plummer (official capacity only): (1) Form 5 (Notice

7

of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Clark. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Clark, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Clark, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

8

Finally, Clark is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED:  June 22, 2026**

                                            **NANCY J. ROSENSTENGEL**
                                            **United States District Judge**

<u>**Notice to Plaintiff**</u>

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**